**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| WARREN S. HAGAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-CV-05022-SRB |
| v. | ) | |
| | ) | |
| DOUG RADER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BRAD COLE'S SUGGESTIONS IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Brad Cole ("Cole") by and through his counsel of record, and, for his Suggestions in Support of his Motion for Summary Judgment, filed contemporaneously herewith, states as follows:

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 4

II. STATEMENT OF UNCONTROVERTED FACTS ....................................... 5

III. LEGAL SUGGESTIONS ................................................................................ 12

    A. Standard of Review .................................................................................. 12

    B. Cole and Rader did not agree to terminate Hagar for running for Christian County Sheriff .............................................................................................. 13

    C. Hagar cannot demonstrate the stated legitimate reason for his termination was not pretext and, therefore, cannot establish causation sufficient to survive summary judgment .......................................................................... 16

    D. Cole has qualified immunity because Cole did not violate clearly established law by providing truthful information about Hagar to Sheriff Rader and Hagar did not have a clearly established First Amendment right to file for elected office .............................................................................. 18

        1. Even if Cole informed Sheriff Rader of Hagar's prior employment and termination from Greene County, Sheriff Cole did not violate any clearly established law by providing truthful information during a political campaign, entitling Cole to qualified immunity. ........................ 19

        2. In the Eighth Circuit, it is not clearly established that running for office constitutes a "protected activity" sufficient to support Hagar's § 1983 retaliation claim, and Cole is entitled to qualified immunity .......... 20

IV. CONCLUSION ................................................................................................ 23

## Cases

*Anderson v. Creighton,* 483 U.S. 635 (1987) ...................................................................... 18, 20

*Arizona Free Enterprise Club's Freedom PAC, v. Bennet*, 564 U.S. 721 (2011) ...................... 20

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ............................................................................... 21, 22

*Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982)........................................................................ 21, 22

*Carver v. Denni*s, 104 F.3d 847 (6th Cir. 1997) ........................................................................ 22

*Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004) .............................................................................. 18

*Fought v. Hayes Wheels Intern., Inc.*, 101 F.3d 1275 (8th Cir. 1996)...................................... 14

*Great Plains Real Estate Development, LLC v. Union Central Life Ins., Co.*, 536 F.3d
    939 (8th Cir. 2008)............................................................................................................. 12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................... 18

*Helmig v. Fowler*, 828 F.3d 755 (8th Cir. 2016) ................................................................. 13, 14

*Hopkins v. Saunders*, 93 F.3d 522 (8th Cir. 1996) ................................................................... 20

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ................................................................................. 18

*Moody v. St. Charles County*, 23 F.2d 1410 (8th Cir. 1994) ..................................................... 12

*Morris v. City of Chillicothe*, 512 F.3d 1013 (8th Cir. 2008) .................................................... 17

*Mulloy v. Acushment Co.*, 460 F.3d 141 (6th Cir. 2006) .......................................................... 14

*Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) ............................................................... 21

*Nord v. Walsh County*, 757 F.3d 734 (8th Cir. 2014)............................................................... 18

*Okruhlik v. Univ. of Arkansas*, 395 F.3d 872 (8th Cir. 2005) ................................................... 16

*Osborn v. Grussing*, 477 F.3d 1002 (8th Cir. 2007) ................................................................. 16

*Ramirez-Peyro v. Holder*, 574 F.3d 893 (8th Cir. 2009) .......................................................... 19

*Riddle v. Riepe*, 866 F.3d 943 (8th Cir. 2017 ..................................................................... 16, 23

*Schleck v. Ramsey County*, 939 F.2d 638 (8th Cir. 1991) ......................................................... 18

*Shockency v. Ramsey County*, 493 F.3d 941 (8th Cir. 2007)..................................................... 22

## Statutes

42 USC § 1983............................................................................................................................ 4

## Other Authorities

Black's Law Dictionary (10th ed. 2014)..................................................................................... 14

## Rules

Fed. R. Civ. P. 56(c) ................................................................................................................... 12

## I. INTRODUCTION

This is an employment/political retaliation case brought under 42 USC § 1983. The Plaintiff, Warren Hagar ("Hagar") is a former Sheriff's Deputy for Stone County, Missouri ("Stone County"). At all relevant times, Doug Rader ("Rader") was the Sheriff for Stone County and Cole was the Sheriff for Christian County, Missouri ("Christian County").[1] Hagar claims that his firing from Stone County violated his First Amendment rights.

According to Rader, Hagar's employment was terminated because he failed to disclose his previous employment as a jail guard for a neighboring county, Greene County, Missouri ("Greene County") which in turn prevented Stone County from uncovering the facts behind Hagar's exit from Greene County—an inappropriate relationship with a female inmate. Hagar alleges Rader's stated reason for separation was pretext, and instead was fired because he filed to run for Christian County Sheriff in early 2016. Further, Hagar claims the Cole "conspired" with Rader to have Hagar fired because Hagar filed to run for Christian County Sheriff.

Rader unequivocally testified he alone made the decision to terminate Hagar's employment from Stone County and that Cole did not have any role, direct or indirect, in the decision. Cole did not ask or pressure Rader into firing Hagar. Hagar admits he has no personal knowledge of any communication between Rader and Cole. Instead, Hagar relies on the testimony and "impressions" of Cole's former Chief Deputy Lyndle Spencer. However, Spencer's testimony establishes nothing other than Cole was aware Hagar was terminated from Stone County. Spencer acknowledges he has no actual knowledge about any communications between Cole and Rader.

Cole is entitled to summary judgment because there is not a genuine issue of fact as to whether Rader acted alone in determining to terminate Hagar. Further, Cole is entitled to qualified

---

[1] Only Count III of the Second Amended Complaint applies to Defendant Cole.

immunity from suit because he did not violate "clearly established law." Eighth Circuit precedent does not clearly establish that Hagar's filing to run for office constituted protected speech. And, even if Cole provided information to Rader about Hagar's employment with Greene County, which led to Hagar's termination, providing truthful information about a political opponent does not violate clearly established law. Rather, it is protected by the First Amendment.

## II.    STATEMENT OF UNCONTROVERTED FACTS[2]

1.    Hagar is a former employee of Stone County, Missouri. He worked for Stone County as a Sheriff's Deputy/Bailiff beginning in February of 2014, through his termination of employment on April 4, 2016. [See Hagar's Second Amended Complaint at ¶¶ 11 & 17]

2.    At all relevant times, Doug Rader has been the Sheriff of Stone County. Rader was elected as the Stone County Sheriff in 2012, taking over as sheriff on January 1, 2013, and was the sheriff when Hagar was hired. [See Hagar's Second Amended Complaint at ¶ 7; See also March 14, 2018, Deposition of Hagar at 15:2–16, a copy of which is attached hereto as Exhibit 1; See also Deposition of Rader at 8:14–23, 14:10–13, & 45:18–20, a copy of which is attached hereto as Exhibit 2]

3.    At all relevant times, Brad Cole has been the Sheriff of Christian County. Cole assumed office on August 7, 2015. [Hagar's Second Amended Complaint at ¶ 8; Affidavit of Sheriff Cole, a copy of which attached hereto as Exhibit 3 at ¶¶ 3–4]

4.    Rader first met Cole after Cole was elected as Christian County Sheriff in August 2015. Rader knows all of the sheriffs in the counties that neighbor Stone County. Rader talks often with neighboring sheriffs, including Cole, about a wide variety of issues. [Exhibit 2 at 51:3–54:23, 103:16–19; See also Exhibit 3 at ¶¶ 3–4]

---

[2] These uncontroverted facts are controverted for purposes of summary judgment only, and for no other purpose.

*Hagar's Candidacy for Christian County Sheriff*

5.      Throughout Hagar's two-plus years working for Stone County as a Sheriff Deputy/Bailiff, he let it be known he was interested in running for Christian County Sheriff. [Exhibit 1 at 15:17–16:12; Hagar's Answer to Stone County's Interrogatory. No. 6, a copy of which is attached hereto as Exhibit 4]

6.      The first time Hagar told Rader about his decision to run for Christian County Sheriff was in January 2016. Rader told Hagar it was hard to run, and hard to be Sheriff. [Exhibit 1 at 7:1–17; See also Exhibit 4; See also Second Amended Complaint at ¶ 14]

7.      In several follow-up conversations with Rader, Hagar alleges Rader told him running for Sheriff may cause problems which would cause conflict between Stone County and Christian County. [Exhibit 4; Second Amended Complaint at ¶ 15; See also Hagar's November 15, 2017 Deposition at 119:1–12, a copy of which is attached hereto as Exhibit 5]

8.      Hagar does not know to what "problems" Rader was referring. Rader did not tell Hagar anything Cole purportedly told Rader. [Exhibit 1; at 22:8–23:2; Exhibit 5 at 120:9–14, 121:9–17]

9.      Regardless of what Rader told Hagar, Hagar's candidacy for Stone County Sheriff did not cause any problems with Christian County or Sheriff Cole. [Exhibit 2 at 103:20–104:1]

10.     Rader tried to talk Hagar out of running for Christian County Sheriff because he was trying to save Hagar time, money, and heartache. When Rader learned Hagar did not have any experience in political races, had no financial or political backing, Rader felt Hagar was ill-equipped to run for sheriff and that Hagar was wasting his time. [Exhibit 2 at 60:5–61:8, 65:1-10]

11.     After Rader talked with Hagar, Rader assumed Hagar "had come to his senses" and was no longer going to run for sheriff. [Exhibit 2 at 63:4–7]

6

12.     On or about February 8, 2016, Rader texted Cole stating "[p]retty sure I took care of Hagar today and don't believe you will have to worry about him running" to which Cole replied "[o]k thanks." [Exhibit 1 at 24:15-17; See Text Message between Rader and Cole, a copy of which is attached hereto as Exhibit 6; See also Exhibit 2 at 62:12–63:19]

13.     On February 26, 2016, Hagar officially filed to run for Christian County Sheriff in the August 2016 primary election.  The same day, Rader texted Cole stating "[h]eads up, Hagar says he is going to file today.  I have begged him not to do it.  Told him there is no way he can beat you" to which Cole replied, "[o]k thanks, I guess he will just have to find out for himself." [Second Amended Complaint at ¶ 14; See also Exhibit 6]

14.     Rader does not recall talking about Hagar with Cole about the election after the February 26, 2016 text.  Rader is certain there were no other texts or emails between him and Cole on the subject. [Exhibit 2 at 68:5–11]

*Allegation/Comment Made by Citizen Against Hagar*

15.     On March 1, 2016, a newspaper article was published about Hagar in the Christian County Headliner.  In the article, it stated Hagar was running to be the Christian County Sheriff and took credit for the indictment and guilty plea of the former Christian County Sheriff, Joey Kyle.  [Exhibit 7; See also Exhibit 2 at 69:6–70:6]

16.     On March 2, 2016, in the online comment section of the newspaper article, someone posted "[m]aybe somebody needs to do a report on why he was fired from Greene County.  I don't think that having an affair with a female inmate makes somebody Sheriff material.  Is that what Christian County wants in a Sheriff somebody like this."  [Exhibit 7; See also Exhibit 2 at 69:6–70:6]

*Hagar's Separation of Employment with Stone County*

17.     On or about March 16, 2016, Rader became aware of the information/allegation in the comment section of the March 2, 2016, newspaper article (Exhibit 7). Rader talked with the Greene County Sheriff and verified Hagar did previously work for Greene County and checked Hagar's personnel file and realized Hagar did not disclose that he previously worked for Greene County. [Exhibit 8; See also Exhibit 2 at 72:10–73:12]

18.     Cole did not bring to Rader's attention anything about Hagar's employment with Greene County. [Exhibit 2 at 105:11–19]

19.     On April 1, 2016, Rader went to the Greene County Sheriff's Office to examine Hagar's Greene County personnel file. Rader noted Hagar worked for Greene County from June 2003–January 2006. While working at Greene County an internal investigation showed Hagar had inappropriate relations with a female inmate. Rader concluded Hagar lied on his application to Greene County, and lied when asked about his employment with Greene County, the result of which was Hagar's termination of employment with Stone County, but Hagar decided to resign in lieu of termination. [Exhibit 8; See also Exhibit 2 at 79:25–80:6]

20.     Rader was particularly concerned over the allegation that while working for Greene County he had inappropriate relationship with a female prisoner because Hagar, as a Bailiff for Stone County, was responsible for transporting female prisoners to and from Court. [Exhibit 2 at 46:8–19, 103:25–104:15]

21.     When Hagar was fired from Stone County in April 2016, no one said anything about Hagar running for Christian County Sheriff. [Exhibit 1 at 42:16–43:2]

*Cole's Former Chief Deputy Lyndle Spencer*

22.     Lyndle Spencer ("Spencer") is the former Chief Deputy for Christian County. Spencer served as the Chief Deputy in Christian County from August 2015 until early December 2016. [Exhibit 3 at ¶ 5]

23.     Several months after Hagar was fired from Stone County, Hagar got word that Spencer had been fired from Christian County. Thinking Spencer may be able to help him, Hagar attempted to contact Hagar.[3] [Exhibit 1 at 27:6–28:3]

24.     Over the course of a month, Hagar went "to any place that [he] thought [Spencer] was at," leaving yellow sticky notes for Spencer to call him. [Exhibit 1 at 28:25–30:6, 38:15–39:22]

25.     Eventually, Spencer called Hagar and they spoke briefly. In the short and brief conversation, Hagar referred Spencer to Hagar's attorney. Hagar never talked with Spencer following their one short conversation. At some point after the single conversation between Spencer and Hagar, Spencer met with Hagar's attorney. [Exhibit 1 at 30:4–33:18, 40:4–12; See also November 15, 2017 deposition of Lyndle Spencer at 18:17–19:19 a copy of which is attached hereto as Exhibit 9; See also the March 14, 2018, Deposition of Spencer at 11:21–12:21, a copy of which is attached hereto as Exhibit 10]

26.     Spencer and Hagar cannot recall when they spoke, but Spencer recalls he was in the process of, or had already commenced his own litigation against Cole.[4] [Exhibit 10 at 7:25–8:14,]

---

[3] Hagar testified that some unidentified current or former deputy from Christian County told him that "they (Rader and Cole) wanted him out of the race." Spencer couldn't recall this deputy's name, so he instead sought out Lyndle Spencer. [November 15, 2017, Deposition of Hagar at 11:8–12:9, attached hereto as Exhibit 5; March 14, 2018, Deposition of Hagar at 33:19–34:2, attached hereto as Exhibit 1]

[4] Spencer's litigation was filed in the Christian County Circuit Court Case No.17CT-CC00318 on March 30, 2017. Further, Hagar's original Complaint filed April 5, 2017, and First Amended Complaint filed July 6, 2017, do not name Cole as a Defendant or allege he conspired with Rader. Accordingly, it is a reasonable inference that Hagar's conversation with Spencer occurred at some point after July 6, 2017.

9

*Spencer's Recollection of Comments by Cole Regarding Hagar*

27. Spencer was never present for a conversation between Cole and Rader in which Hagar was discussed. [Exhibit 10 at 16:5–12]

28. Spencer does not know Rader well and does not know if they would recognize each other. Spencer never talked with Rader about Hagar. [Exhibit 9 at 17:23; See also Exhibit 10 at 8:21–9:5]

29. Spencer was present on at least two occasions where Cole mentioned Hagar. The first time, Spencer can only recall some joking about Hagar being dressed up as a superhero. During this conversation, Cole said something about Hagar being his opponent in the upcoming election. [Exhibit 9 at 8:11–11:18]

30. At some point Cole told Spencer he wished he was running unopposed in the upcoming 2016 Christian County Sheriff's Election [Exhibit 10 at 15:11–20]

31. Spencer also recalls Cole, and some point, talking about Hagar being fired from Greene County, Missouri. [Exhibit 10 at 20:6–21:18, 30:14–18]

32. Spencer never heard Cole say he was putting pressure on Rader to terminate Hagar's employment with Stone County. [Exhibit 10 at 16:17–17:19, 18:12–17]

33. Spencer learned of Hagar's separation from Stone County when Cole told him, likely *after* Hagar had already been fired. Cole told Spencer Hagar was fired "for lying on an application." [Exhibit 10 at 27:9–24; 17:3–9]

34. Spencer is of the opinion Cole told Rader about Hagar's employment with Greene County with the purpose of getting Hagar fired from Stone County, which in turn would help Cole in his sheriff's election. However, Spencer has no idea what Cole told Rader about Hagar's employment with Greene County. [Exhibit 9 at 16:17–17:20; See also exhibit 10 at 24:15–25:20]

35.     Spencer has no reason to believe Cole relayed any false information about Hagar to Stone County Sheriff Rader. [Exhibit 10 at 28:6–9]

36.     Hagar is unaware of any witnesses that were present or have knowledge of an alleged agreement between Rader and Cole to have Hagar terminated from his employment at Stone County, other than Lyndle Spencer.  [Exhibit 5 at 7:5–18]

*Stone County Sheriff Rader's Testimony*

37.     Cole did not ask Rader to terminate Hagar's employment as a favor or otherwise. [Exhibit 2 at 104:6–7]

38.     Cole did not pressure Rader into firing Hagar. [Exhibit 2 at 104:8–10]

39.     Cole was not consulted in making the decision to terminate Hagar's employment. Rader did not tell Cole about Hagar's firing until after it occurred. [Exhibit 2 at 104:18–24]

40.     There was no agreement at any time between Rader and Cole to terminate Hagar's employment. [Exhibit 2 at 105:4–7, 105:4–10]

41.     Cole never asked Rader to talk with Hagar and try to get Hagar to drop out of the sheriff's race. [Exhibit 2 at 104:15–17]

42.     Rader never asked for, or received any type of favor from Cole for firing Hagar. [Exhibit 2 at 105:4–10]

43.     Cole had no authority over Rader or Stone County with respect to the decision to terminate Hagar's employment.  Likewise, Hagar did not believe Cole or Christian County had any authority over him when he worked for Stone County.  [Exhibit 2 at 104:25–105:3; See also Exhibit 1 at 40:13–41:14]

44.     Cole did not inform Rader that Hagar separated from Greene County over inappropriate relations with a female inmate. [Exhibit 2 at 71:22–72:9]

11

45.     Cole is named as a defendant in Count III of Hagar's Second Amended Complaint. Count III alleges, in relevant part, "the actions of Rader (sic) and Cole constitute a meeting of the minds, and actions in furtherance of an agreement to deprive Hagar if (sic) his 1st Amendment rights." Count III is the only Count asserted against Cole. [Hagar's Second Amended Complaint at ¶ 33 & at Count III; Exhibit 5 at 6:15–7:18]

46.     The sole basis for Hagar's First Amendment retaliation claim is that he was retaliated against for "officially sign[ing] up" and "running for sheriff of Christian County." [Hagar's Second Amended Complaint at ¶¶ 14, 19]

## III.     LEGAL SUGGESTIONS

### A.     Standard of Review

Summary judgment is appropriate if there is no genuine issue of material fact and Cole is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" only if sufficient evidence exists to allow a reasonable jury to find in favor of the non-moving party. *Great Plains Real Estate Development, LLC v. Union Central Life Ins., Co.*, 536 F.3d 939, 944 (8th Cir. 2008). To survive summary judgment, Hagar must do more than simply make assumptions and conclusions, he must "substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.2d 1410, 1412 (8th Cir. 1994) (internal citations and quotations omitted, cleaned up). "If the evidence is not significantly probative" Sheriff Cole is entitled to judgment as a matter of law. *Moody*, 23 F.2d 1410, 1412 (8th Cir. 1994).

Hagar cannot provide sufficiently probative evidence to permit a reasonable jury to conclude Rader and Cole had an agreement to deprive Hagar of a First Amendment right. Further,

Hagar cannot establish that Stone County's legitimate reason for terminating his employment—lying on his employment application to conceal he had been fired for engaging in an inappropriate relationship with a female inmate—is pretext for retaliation. Finally, Cole has qualified immunity from suit because the law does not clearly establish Hagar had a First Amendment right to run for office and providing truthful information about Hagar's employment with Greene County does not violate clearly established law. For these reasons, Cole is entitled to judgment on Hagar's conspiracy claim.

### B. Cole and Rader did not agree to terminate Hagar for running for Christian County Sheriff.

Hagar's sole count against Cole is for conspiracy to deprive him of his First Amendment rights by retaliating against him. Specifically, he alleges Cole and Rader agreed to terminate him solely for filing to run for Christian County Sheriff. In order to succeed on this claim, Hagar must prove (1) Cole and Rader "reached an agreement to" to retaliate against Hagar for exercising his First Amendment rights, (2) that either Cole and Rader took an overt action in furtherance of that agreement, (3) that the overt act injured Hagar. *Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016). Importantly, Rader was unequivocal that there was no such agreement, and that Cole played no role in his decision to terminate Hagar. [SOF ¶¶ 37–44] And, Hagar has no other probative evidence of any such agreement. Thus, Hagar cannot prove Cole and Rader reached an agreement to retaliate against Hagar.

There is no direct evidence Sheriff Cole and Sheriff Rader came to an agreement to deprive Hagar of his First Amendment rights. Instead, Hagar will likely argue that reasonable inference can be used to survive summary judgment. But, to survive summary judgment on his conspiracy claim Hagar "must allege with particularity and *specifically demonstrate* material facts that the

defendants reached an agreement." *Helmig*, 828 F.3d 755, 763 (8th Cir. 2016). (emphasis added, internal citations and quotations omitted).

Hagar's arguments require this Court to speculate, not make reasonable inferences. "A reasonable inference is one which may be drawn from evidence *without resort to speculation*." *Fought v. Hayes Wheels Intern., Inc.*, 101 F.3d 1275, 1277 (8th Cir. 1996) (emphasis added). Speculation, as defined by Black's Law Dictionary means, "the act … of theorizing about matters over which there is no certain knowledge." *Speculation*, Black's Law Dictionary (10th ed. 2014). "An appropriate summary judgment motion cannot be defeated by inferences that are improbable or by speculation." *Mulloy v. Acushment Co.*, 460 F.3d 141, 145 (6th Cir. 2006).

Hagar wants this Court to speculate and make improbable inferences and assumptions based solely on a few innocuous facts that are not sufficiently probative to prove an agreement to violate Hagar's First Amendment rights. Specifically, Hagar jumps to the conclusion that Cole and Rader had an agreement to deprive him of his constitutional rights because they had frequent communication and Rader informed Cole that he was unable to talk Hagar out of running for Christian County Sheriff. First, the fact that they knew one another and had frequent communication is proves nothing except that they had a working relationship. Rader knew *all* sheriffs of neighboring jurisdictions and spoke with them on a wide variety of issues. [SOF ¶ 4] There is nothing about the relationship between Cole and Rader that could lead a reasonable jury to conclude that their interaction—which was the same as the interaction Rader had with other sheriffs—resulted in an agreement to deprive Hagar of his constitutional rights. Essentially, Hagar's argument requires this Court to speculate and assume that if two elected officials have any conversations with one another about their upcoming election opponents, they *must* have agreed to violate their opponents First Amendment rights. This inference is not reasonable.

14

Aside from knowing one another and communicating with each other as sheriffs of neighboring jurisdictions, the *only* other evidence Hagar could potentially rely on to support his fanciful hypothesis is the exchange of text messages between Rader and Cole. But upon a reasonable inspection, these text messages fail to demonstrate Cole and Rader had an agreement to terminate Hagar.

The first message Rader sent to Cole indicated that Sheriff Rader said, "Pretty sure I took care of Hagar today and don't believe you will have to worry about him running." [SOF ¶ 12] Notably, as of the date of that message, which was sent on February 8, 2016, Rader had not been terminated or suffered any adverse action. [SOF ¶¶ 12, 19] Weeks later, on February 26, 2016, Rader again texted Cole and informed him, "[h]eads up, Hagar says he is going to file today, I have begged him not to do it. Told him there is no way he can beat you." [SOF ¶ 13] Cole's response is telling, as he does not ask, encourage, or even hint at having Rader take any action against Hagar. Instead, Cole simply acknowledges receipt of Rader's text and says, "[o]k thanks, I guess he will just have to find out for himself." [SOF ¶ 13] Cole's indication that he will have to find out for himself that Hagar cannot lead only to one inference—that Cole intended to beat Hagar during the course of the campaign.

It is unreasonable to infer that one sheriff giving another sheriff a "heads up" that one of his deputies is going to run for office equates to an agreement between the two sheriffs to fire him for doing so. Because there is no sufficiently probative evidence that could allow a reasonable jury to infer an understanding between Cole and Rader to violate Hagar's rights, this Court should enter summary judgment in Sheriff Cole's favor.

Hagar can point to no probative evidence, let alone significantly probative evidence, that could lead a reasonable jury to conclude that Cole and Rader came to an agreement to terminate

Hagar for filing to run for Christian County Sheriff. This Court should enter judgment in Cole's favor on Count III of Hagar's Second Amended Complaint.

### C. Hagar cannot demonstrate the stated legitimate reason for his termination was not pretext and, therefore, cannot establish causation sufficient to survive summary judgment.

Rader fired Hagar because he omitted his previous employment with Greene County. This omission concealed that Greene County was going to fire Hagar because of his inappropriate relationship with a female inmate. [SOF ¶ 19] Hagar cannot demonstrate he would not have been fired if he did not run for Christian County Sheriff. As a result, he cannot establish his candidacy was the cause of his termination.

To prove he was retaliated against for exercising his First Amendment rights, Hagar must prove (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) that the two are causally connected. *Okruhlik v. Univ. of Arkansas*, 395 F.3d 872, 878 (8th Cir. 2005).[5] As to causation, the protected speech must be the "but-for" cause of the adverse action. *Osborn v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). "If there is a finding that the retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection … despite proof of some retaliation animus in the official's mind." *Id.* (citations and quotations omitted). Because Hagar's employment was separated for a legitimate, nondiscriminatory reason, Hagar cannot prove a deprivation and his conspiracy claim fails[6].

In ruling on summary judgment motions for First Amendment claims, the Court uses a three-part burden-shifting analysis. First, Hagar must establish he suffered an adverse employment

---

[5] In order to succeed on his conspiracy claim against Cole, Hagar must not only show a meeting of the minds, but also prove the underlying constitutional deprivation. *Riddle v. Riepe*, 866 F.3d 943, 948-49 (8th Cir. 2017) ("To prevail on a § 1983 conspiracy claim, a plaintiff is required to prove a deprivation of a constitutional right ….").

[6] Cole also disputes that Hagar engaged in "protected activity" by simply filing to run for office as is explained in more detail in Cole's arguments in support of qualified immunity.

action that was causally connected to his participation in protected activity. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). If Hagar satisfies the first part of the test, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. *Id*. Once the employee proffers a legitimate, nondiscriminatory reason, the burden shifts back to Hagar to show the justification for firing is unworthy of credence. *Id*. Importantly, proving the proffered legitimate reason is pretextual is more difficult than proving a prima facie case because the evidence is viewed in the light of the employer's justification. *Id*. at 1019.

Here, Rader did not fire Hagar when he knew Hagar was considering a run for Christian County Sheriff—he simply counseled him against it because he thought it would be a waste of Hagar's time and effort. [SOF ¶¶ 10, 13, 19] Even when Rader learned Hagar had filed to run for office in late February 2016 he did not terminate Hagar. [SOF ¶¶ 13, 19] Rather, weeks after Hagar filed to run for Rader learned, through the media, that Hagar had been employed at Greene County—a fact he omitted from his employment application. [SOF ¶¶ 15-21] Rader then went to Greene County and reviewed Hagar's personnel file—as would have been done prior to being hired had Hagar not lied on his application—Rader learned Hagar was found to have had an inappropriate relationship with a female inmate. [SOF ¶ 19] This concerned Rader because Hagar was a bailiff for Stone County and had frequent interaction and oversight of female inmates. Hagar then resigned in lieu of being terminated. [SOF ¶ 20]

Even if Hagar can meet his initial burden of proving a prima facie causal connection between his candidacy and his termination, he cannot put forth *any* evidence to demonstrate the reason he had to resign was pretext—that is, unworthy of credence. He can point to no evidence controverting the fact that he lied on his application to Stone County, or that he was not terminated from Greene County for engaging in an inappropriate relationship with a female inmate. And

certainly, a Rader's concern that is bailiff—who is responsible for overseeing, protecting, and transporting inmates—is dishonest and has a history of engaging in inappropriate relationships with inmates, is worthy of credence.  When viewed in light of the legitimate, non-discriminatory reason justification, no reasonable jury could infer Hagar's candidacy for sheriff was the motivating or substantial factor in his separation from employment with Stone County because he was terminated for lying on his application.

> **D.** **Cole has qualified immunity because Cole did not violate clearly established law by providing truthful information about Hagar to Sheriff Rader and Hagar did not have a clearly established First Amendment right to file for elected office.**

Summary Judgment on the basis of qualified immunity is appropriate if "no genuine issue of material facts exist regarding whether the officials' actions, even if unlawful, were objectively reasonable in light of the legal rules that were 'clearly established' at the time the actions were taken." *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004) (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 (1987) (internal citations omitted). Qualified immunity is immunity not just from liability, but from suit itself. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Cole is "shielded from liability for civil damages insofar as [his] conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Schleck v. Ramsey County*, 939 F.2d 638, 641 (8th Cir. 1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  With these standards in mind, Cole is entitled to qualified immunity.

The qualified-immunity "analysis requires a two-step inquiry: (1) whether the facts show by the plaintiff make out a violation of a constitutional or statutory right; (2) whether that right was clearly established at the time of the … alleged conduct." *Nord v. Walsh County*, 757 F.3d 734, 738 (8th Cir. 2014).  Here, the law of this Circuit has not clearly established that filing to run for elected office, without more, constitutes protected activity under the First Amendment.

Further, to the extent Cole provided truthful information about Hagar's employment with Greene County, his speech was protected and not a clear violation of established law.

1. **Even if Cole informed Sheriff Rader of Hagar's prior employment and termination from Greene County, Sheriff Cole did not violate any clearly established law by providing truthful information during a political campaign, entitling Cole to qualified immunity.**

To the extent Hagar will attempt to rely on the testimony of Lyndle Spencer—that Spencer believed Sheriff Cole provided information to Sheriff Rader about Hagar's past employment and termination from Greene County—Sheriff Cole is entitled to qualified immunity because providing truthful information during a campaign is not a violation of clearly established law. Moreover, to the extent he provided such information to Rader, Cole was acting an individual candidate for elected office. As a result, holding him liable for speech he made during his campaign would violate Sheriff Cole's First Amendment rights.

It is undisputed that Sheriff Cole had no authority over either Sheriff Rader or Hagar. [SOF ¶ 43] "Absent any actual or purported relationship between [Cole's] conduct and his duties as [Sheriff], [Cole] cannot be acting under color of state law." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 901 (8th Cir. 2009) (internal quotations and citations omitted). Thus, if Cole provided negative information to Rader about Hagar, he could have reasonably believed he was doing so in his personal capacity as a candidate for Christian County Sheriff, and not under the color of state law, as is required to succeed on his § 1983 claim. And, because he was speaking as a candidate for elected office, he reasonably believed his speech was protected by the First Amendment and cannot be a violation of clearly established law.

Aside from Lyndle Spencer having no *actual* knowledge of the interactions between Rader and Cole, Spencer believed Cole provided the information to Sheriff Rader that Hagar had previously worked for Greene County and *hoped* Sheriff Rader would terminate Hagar. [SOF ¶

19

34] Hagar can point to no law that makes it illegal for Cole, whether as a sheriff or as a candidate, to provide this truthful information. In fact, even if Cole did provide the truthful information, his speech to Rader would be protected by the First Amendment. The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Arizona Free Enterprise Club's Freedom PAC, v. Bennet*, 564 U.S. 721, 734 (2011) (internal citations and quotations omitted). Thus, Cole reasonably believed any truthful information he provided was protected and lawful.

Cole is entitled to qualified immunity unless Hagar can make "a particularized showing that a reasonable official would understand that what he is doing violated that right or that in the light of preexisting law the unlawfulness of the action was apparent." *Hopkins v. Saunders*, 93 F.3d 522, 525 (8th Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal quotations omitted)). At the very least, a reasonable official in Cole's position would not have known that he was precluded, by virtue of also being sheriff, from doing that which any other citizen was permitted to do—provide truthful information about his political opponent.

Hagar can point to no law that clearly establishes Cole had to abstain from providing truthful information to Rader. As a result, Sheriff Cole is shielded from suit and liability by qualified immunity.

2. **In the Eighth Circuit, it is not clearly established that running for office constitutes a "protected activity" sufficient to support Hagar's § 1983 retaliation claim, and Cole is entitled to qualified immunity.**

Hagar's conspiracy claim against Cole is premised only upon the theory that Cole and Rader conspired to terminate Hagar's employment from Stone County in retaliation for Hagar doing nothing more than filing to run for Christian County Sheriff. [SOF ¶ 46] As demonstrated by Hagar's second amended complaint, he alleges the *sole* basis for his termination was due to

him "officially sign[ing] up to put his name on the ballot for the August 2016 election." [SOF ¶ 46]. Hagar has not alleged it was in retaliation for any opposition to a position held by Cole, any position he himself held, any speech he engaged in, any expression of political belief, or because of his political party (Cole and Hagar share the same political affiliation). Put simply, Hagar has not engaged in speech or expression that is protected by the First Amendment.

There is no Eighth Circuit precedent establishing that filing for office, or even announcing one's candidacy, equates to speech protected by the First Amendment. In fact, other circuits have declined to extend First Amendment protection to such actions. As a result, it cannot be "beyond debate" that Hagar exercised a First Amendment right by filing for office. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (For the law to be "clearly established," the "existing precedent must have placed the … constitutional question beyond debate."). Moreover, two circuits have determined that simply announcing a candidacy or being a candidate, does not invoke First Amendment protections in and of itself.[7] Rather, there has to be some political content, or speech made during the campaign to warrant protection.

The Seventh Circuit, in *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977), found that the United States Supreme Court has not "attached a fundamental status to candidacy as to invoke a rigorous standard of review." *Id*. at 828. Instead, the Seventh Circuit determined the Supreme Court's decisions "indicate that plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection." *Id*.[8] Similarly, in *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the Seventh Circuit found a Mayor's requirement that a subordinate take a leave from office while she

---

[7] While the Sixth and Seventh Circuits have determined there is First Amendment fundamental right to candidacy, other circuits have found such a right does exists. However, the Eighth Circuit has not directly addressed the issue and the divergent rulings between the Circuits negates a finding that such a right was clearly established.
[8] The *Newcomb* court ultimately found that the Plaintiff's allegations implicated that there was content-based reasons for the termination and found that, when those circumstances exist, an employee does have a First Amendment Right.

Case 3:17-cv-05022-SRB   Document 85   Filed 06/13/18   Page 21 of 25

ran for mayor did not violate her First Amendment Rights because the plaintiff had not made any allegations that the Mayor's actions were based on any views expressed, but rather simply the fact of her candidacy. *Id*. at 624 ("[T]he only right specifically alleged is the right to run for public office. The First Amendment does not in terms confer a right to run for public office ...."). Likewise, in *Carver v. Denni*s, 104 F.3d 847 (6th Cir. 1997), the Sixth Circuit determined that the First Amendment does not protect a candidacy announcement as doing so "would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy." *Id*. at 853.

Here, Hagar does not allege Rader singled him out because of any political belief or expression, or because of any political affiliation, partisan activity, expression of opinion, or speech. Instead, he simply alleges that he was retaliated against for "running for sheriff of Christian County." [SOF ¶ 46] Such a complete lack of content—whether speech, association, or expression—fails to give rise to a *clearly established* constitutional right.

Sheriff Cole was unable to unearth a case in which the Eighth Circuit directly addressed whether candidacy, in and of itself, is granted protection under the First Amendment.[9] While a case directly on point is not required for the law to be "clearly established," the "existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Here, the split in circuits finding that candidacy, in and of itself, is protected by the First Amendment, and those finding it is not, demonstrates the constitutional question is not beyond debate, but rather still being actively debated. Thus, without clear guidance from the

---

[9] Plaintiff may cite to *Shockency v. Ramsey County*, 493 F.3d 941 (8th Cir. 2007), in an effort to argue it was clearly established that participation in electoral activities constituted protected activity. However, in that case the parties did not dispute, and thus the court did not determine, that issue.

Eighth Circuit, this Court cannot find that simply running for office—without engaging in speech or expression—is protected activity. And because a constitutional deprivation is required before a conspiracy claim can succeed, this Court cannot determine that conspiring to stop a person from engaging in a non-protected activity is a violation of clearly established law. *Riddle v. Riepe*, 866 F.3d 943, 948-49 (8th Cir. 2017) (To prevail on a § 1983 conspiracy claim, a plaintiff is required to prove a deprivation of a constitutional right …")). As a result, Cole is entitled to qualified immunity.

## IV.    CONCLUSION

Sheriff Cole and Sheriff Rader did not come to an agreement or understanding to retaliate against Hagar for filing to run for Christian County Sheriff and Hagar can point to no probative evidence that establishes such an agreement existed. Therefore, summary judgment is appropriate on Hagar's claim of conspiracy against Sheriff Cole. Further, Hagar cannot demonstrate that the reason his employment with Stone County was separated was pretextual. And, without evidence of a constitutional deprivation, Hagar's § 1983-conspiracy claim fails.

Finally, Sheriff Cole is entitled to qualified immunity because it is not clearly established that Hagar has a First Amendment right to file to run for elected office. As a result, there can be no deprivation to support Hagar's § 1983-conspiracy claim.

WHEREFORE, Defendant Brad Cole respectfully requests this Court enter judgment in his favor on Count III of Plaintiff's Second Amended Complaint and provide other relief to Brad Cole this Court deems just and equitable.

Respectfully submitted,

ENSZ & JESTER, P.C.


/s/ Matthew J. Gist

MATTHEW J. GIST                MO #54732
CHRISTOPHER M. NAPOLITANO MO #66610
2121 City Center Square
1100 Main Street
Kansas City, MO  64105
Telephone:  816-474-8010
Facsimile:  816-471-7910
E-mails:     mgist@enszjester.com
             cnapolitano@enszjester.com
**ATTORNEYS FOR CHRISTIAN
COUNTY, MISSOURI AND BRAD COLE**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 13, 2018, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

BRANDON C. POTTER
CORBETT LAW FIRM, P.C.
2015 East Phelps Street
Springfield, Missouri 65802
Telephone:   (417) 866-6665
Facsimile:   (417) 866-6699
E-mail(s):   bpotter@corbettlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

BILL D. CROSS
MICHAEL K. SECK
FISHER, PATTERSON, SAYLER & SMITH
9393 West 110th Street, Suite 300
Overland Park, KS 66210
Telephone:   (913) 339-6757
Facsimile:   (913) 339-6187
E-mail(s):   bcross@fisherpatterson.com
             mseck@fisherpatterson.com
**ATTORNEYS FOR DEFENDANTS DOUG RADER
AND STONE COUNTY, MISSOURI**

/s/ Matthew J. Gist
**ATTORNEYS FOR CHRISTIAN
COUNTY, MISSOURI AND BRAD COLE**